# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

MELANIE L.,

                                                Plaintiff,

        v.                                                      5:22-CV-87
                                                              (ATB)

COMMISSIONER OF SOCIAL SECURITY,

                                                Defendant.

JUSTIN GOLDSTEIN, ESQ., for Plaintiff
HEETANO SHAMSOONDAR, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## MEMORANDUM-DECISION and ORDER

This matter was referred to me, with the consent of the parties, to conduct all proceedings and enter final judgment, pursuant to the Social Security Pilot Program, and in accordance with the provisions of N.D.N.Y. General Order No. 18, 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and N.D.N.Y. Local Rule 73.1.  (Dkt. Nos. 4, 5).

## I.    PROCEDURAL HISTORY

On February 8, 2018, plaintiff protectively filed an application for Supplemental Security Income ("SSI"), alleging disability beginning January 1, 2017. (Administrative Transcript ("T") 273-289).  Plaintiff's application was denied initially on April 27, 2018. (T. 109-122).  Administrative Law Judge ("ALJ") Paul D. Barker, Jr. granted plaintiff's request for a hearing and heard testimony from plaintiff and vocational expert ("VE") Peter Manzi at a video hearing on February 21, 2020. (T. 45-78). Plaintiff appeared without representation at this proceeding. (T. 48-52).  The ALJ

advised plaintiff of her rights regarding representation, but plaintiff elected to move forward with the hearing. (T. 48-49).

Following the February 2020 hearing, the ALJ obtained new evidence that he proffered to plaintiff. (T. 419-420). Plaintiff, through her non-attorney representative, requested a supplemental hearing. (T. 433). With plaintiff's consent, a telephonic hearing was held on April 19, 2021. (T. 79-105). Plaintiff and a second VE, Celena Earl, testified. (T. 85-105). During this hearing, the ALJ granted plaintiff's request to amend her alleged onset date to January 6, 2019. (T. 83). On May 13, 2021, the ALJ held another supplemental hearing to obtain further vocational testimony. (T. 30-44). Plaintiff and a third VE, Julie Harvey, testified. (T. 34-42).

On May 28, 2021, the ALJ issued an order denying plaintiff's claim. (T. 7-29). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on December 3, 2021. (T. 1-6).

## II.   GENERALLY APPLICABLE LAW

### A.   Disability Standards

To be considered disabled, a plaintiff seeking Disability Insurance Benefits or SSI must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

### B.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v.*

*Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir.

2012).  It must be "more than a scintilla" of evidence scattered throughout the

administrative record.  *Id.*  However, this standard is a very deferential standard of

review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at

448.  "To determine on appeal whether an ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining the evidence from

both sides, because an analysis of the substantiality of the evidence must also include

that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859

F.2d 255, 258 (2d Cir. 1988).  However, a reviewing court may not substitute its

interpretation of the administrative record for that of the Commissioner, if the record

contains substantial support for the ALJ's decision.  *Id*.  *See also Rutherford v.

Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence

in the record.  *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles

v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ

explicitly to reconcile every conflicting shred of medical testimony).  However, the ALJ

cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz

v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No.

09-CV-6279, 2010 WL 5072112, at \*6 (W.D.N.Y. Dec. 6, 2010).

## III.  <u>FACTS</u>

Plaintiff was fifty-two years old on the date of her most recent administrative

hearing. (T. 284).  She attended special education classes while in high school, but left after completing the tenth grade. (T. 59, 652, 741).  Her prior employment included work as a babysitter and a merchandise packer at a manufacturing facility, but she had not been employed full-time since 2016. (T. 60, 652, 658).

Plaintiff reported difficulty walking or standing for extended periods, and difficulty sitting for periods longer than ten minutes due to neck pain, lower back pain, and nerve pain in her right leg. (T. 16, 65-66, 658).  She attributed a number of recent falls to her diagnosed Reflex Sympathetic Dystrophy ("RSD"), a chronic condition that caused pain to radiate from her right foot up into her right leg.[1] (T. 66, 658, 1489). With regard to mental health, plaintiff had a history of intermittent treatment for anxiety, depression, and PTSD, and testified about her ongoing difficulties with social interaction due to previous trauma. (T. 66, 741, 1925-28).  At the time of her February 2020 hearing, plaintiff was receiving outpatient mental health treatment and had been prescribed psychiatric medication. (T. 68).

The ALJ's decision provides a detailed statement of the medical and other evidence of record. (T. 14-22).  Rather than reciting this evidence at the outset, the court will discuss the relevant details below, as necessary to address the issues raised by plaintiff.

## IV.   THE ALJ'S DECISION

After reviewing the procedural history of plaintiff's application and stating the

---

[1] RSD, also known as complex regional pain syndrome, is a condition that causes pain, sensitivity, swelling, and changes in skin color to a certain area of the body, most often the extremities, and is believed to be cause by a dysfunction of the peripheral nervous system following physical injury or trauma. https://my.clevelandclinic.org/health/diseases/12085-complex-regional-pain-syndrome-crps .

applicable law, the ALJ found that plaintiff had not engaged in substantial gainful

activity since the amended alleged onset date of January 6, 2019. (T. 12).  At step two

of the sequential evaluation, the ALJ found that plaintiff had the following severe

impairments: "complex regional pain syndrome/reflex sympathetic dystrophy (RSD);

opioid addiction; deep vein thrombosis; degenerative disc disease of the cervical spine

and lumbar spine; post-traumatic stress disorder (PTSD); depression; anxiety;

pancreatitis; and ovarian cysts and fibroids, status post bilateral oophorectomies and

hysterectomy." (T. 12-13).  At step three, the ALJ found that plaintiff did not have an

impairment or combination of impairments that met or medically equaled the severity

of a Listed Impairment.  (T. 13-15).

At step four, the ALJ found that plaintiff had the RFC to perform less than the

full range of light work, as defined in 20 C.F.R. § 416.967(b). (T. 15-22).  Specifically,

he found that plaintiff could

> lift and carry, push and pull 20 pounds occasionally and 10 pounds
> frequently; can stand and walk for six hours of an eight-hour workday, for
> 30 minutes at a time, with the option to sit at the work station for 10
> minutes and continue working after 30 minutes of standing or walking; can
> sit for six hours of an eight-hour workday; can occasionally stoop, climb
> ramps and stairs, and balance, and can never kneel, crawl and crouch, or
> climb ladders, ropes, and scaffolds.  She can understand, remember, and
> carry out simple tasks but not at an assembly line rate; can make simple
> work-related decisions; can have frequent work related interaction with the
> general public; and can have occasional changes in the work setting.

(T. 15-16).

In making the RFC determination, the ALJ stated that he considered all of

plaintiff's symptoms, and the extent to which those symptoms could "reasonably be

accepted as consistent with the objective medical evidence and other evidence, based

on the requirements of 20 C.F.R. 416.929" and Social Security Ruling ("SSR") 16-3p. (T. 16).  The ALJ further stated that he considered opinion evidence and prior administrative medical findings pursuant to 20 C.F.R. § 416.920c. (*Id.*)  The ALJ also found that plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that plaintiff's statements regarding the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. (*Id.*)

Next, the ALJ found that plaintiff had no past relevant work. (T. 22).  Relying on the testimony of VE Harvey, the ALJ found that there were other jobs existing in significant numbers in the national economy that plaintiff could perform, including the unskilled positions of merchandise marker, routing clerk, and mail sorter. (T. 22-23). Accordingly, the ALJ determined that plaintiff was not disabled at any time between the amended alleged onset date of January 6, 2019 through the date of the ALJ's decision. (T. 23).

## V.   ISSUES IN CONTENTION

Plaintiff raises four arguments:

1.   The ALJ failed to properly develop the record because he did not obtain a new treating source or consultative opinion dated after the amended alleged onset date.  (Plaintiff's Brief ("Pl.'s Br.") at 15-22) (Dkt. No. 12).

2.   The ALJ failed to properly evaluate whether plaintiff's cane was medically necessary. (Pl.'s Br. at 23-25).

3.   The ALJ failed to properly evaluate plaintiff's need to change positions during the workday.  (Pl.'s Br. at 23, 25).

4.   The ALJ's step five determination was not supported by substantial evidence.  (Pl.'s Br. at 25).

Defendant contends that the Commissioner's determination should be affirmed because it was supported by substantial evidence. (Defendant's Brief ("Def.'s Br.") at 5-14) (Dkt. No. 16).

For the reasons stated below, this court agrees with defendant and will dismiss the complaint.

## DISCUSSION

## VI.   RFC/EVALUATING MEDICAL EVIDENCE

### A.    Legal Standards

#### 1.    RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill,* No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R. §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999)

(citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010).  An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities.  *Roat v. Barnhart*, 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183, *Stephens v. Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004).  The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence.  *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

## 2.    Evaluation of Medical Opinion Evidence

The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded.  According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion."  *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability;

consistency; relationship with the claimant; specialization; and "other factors."  20
C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical
sources, deference to specific medical opinions, and assigning "weight" to a medical
opinion, the ALJ must still "articulate how [he or she] considered the medical opinions"
and "how persuasive [he or she] find[s] all of the medical opinions."  *Id.* at
§§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1).  The two "most important factors
for determining the persuasiveness of medical opinions are consistency and
supportability," which are the "same factors" that formed the foundation of the treating
source rule.  *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853.  An ALJ is specifically
required to "explain how [he or she] considered the supportability and consistency
factors" for a medical opinion.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  With
respect to "supportability," the new regulations provide that "[t]he more relevant the
objective medical evidence and supporting explanations presented by a medical source
are to support his or her medical opinion(s) or prior administrative medical finding(s),
the more persuasive the medical opinions or prior administrative medical finding(s) will
be."  *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1).  The regulations provide that with
respect to "consistency," "[t]he more consistent a medical opinion(s) or prior
administrative medical finding(s) is with the evidence from other medical sources and
nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior
administrative medical finding(s) will be."  *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss,
the three remaining factors in determining the persuasiveness of a medical source's

opinion.  *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2).  However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5).  *Id.* at §§ 404.1520c(b)(3), 416.920c(b)(3).

### 3.    Duty to Develop the Record

Given the remedial intent of the Social Security statute and the non-adversarial nature of benefits proceedings, an ALJ has an affirmative duty, regardless of whether the claimant is represented by counsel, to develop the medical record if it is incomplete. *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999); 20 C.F.R. §§ 404.1512 (d), 416.912(d) ("We will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports."); *see also Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011) ("The duty of the ALJ, unlike that of a judge at trial, is to investigate and develop the facts and develop the arguments both for and against the granting of benefits.").  "This entails a heightened obligation to ensure both the completeness and the fairness of the administrative hearing."  *Id.* (citing *Cullinane v. Sec. of Dep't of Health and Human Services of U.S.*, 728 F.2d 137, 137 (2d Cir. 1984) (describing an ALJ's "affirmative duty to ensure that pro se disability insurance benefit claimants receive full and fair hearings")).  Moreover, "[t]he ALJ's duty to develop the record is enhanced when the disability in question is a psychiatric impairment." *Tammy H. v. Comm'r of Soc. Sec.*, No. 5:18-CV-851(ATB), 2019 WL 4142639, at *10 (N.D.N.Y. Aug. 30, 2019) (quoting *Champion v. Berryhill*, No. 16-CV-4723, 2017 WL 4404473, at *16 (S.D.N.Y. Sept.

14, 2017) (other citations omitted)).

In furtherance of the duty to develop the record, an ALJ may re-contact medical sources if the evidence received from the treating physician or other medical sources is inadequate to determine disability and additional information is needed to reach a determination.  20 C.F.R. §§ 404.1512(e), 416.912(e).  Although the ALJ must attempt to fill in any obvious gaps in the administrative record, "where the record evidence is sufficient for the ALJ to make a disability determination, the ALJ is not obligated to seek further medical records." *Jaeger-Feathers v. Berryhill*, No. 1:17-CV-06350, 2019 WL 666949, at *3 (W.D.N.Y. Feb. 19, 2019) (quoting *Johnson v. Comm'r of Soc. Sec.*, No. 1:17-CV-06350, 2018 WL 1428251, at *5 (W.D.N.Y. Mar. 22, 2018)).

## B.    Application

The record before the ALJ did not contain any treating source opinions addressing plaintiff's physical or mental functional limitations.[2]  The ALJ thus relied on the "generally persuasive" opinions of state agency medical consultant Dr. A. Auerbach, physical consultative examiner Dr. Kalyani Ganesh, and psychiatric consultative examiner Dr. Dennis Noia when reaching his RFC determination. (T. 20-22).  Plaintiff does not directly challenge the ALJ's evaluation of these opinions, but instead contends that the ALJ failed to adequately develop the record because all of these opinions are dated prior to the amended alleged onset date of January 6, 2019.  As discussed below, this court finds that the ALJ's selective reliance on the medical opinion evidence,

---

[2] The ALJ cited state and county agency forms in the record that were completed by treating sources for various periods of temporary disability, but found all of these to be unpersuasive given their limited scope and lack of specific findings. (T. 21-22, 582-83, 713-16, 718-19, 721-31, 812).  Plaintiff has not challenged this conclusion.

modified as he deemed appropriate because of more recent objective medical evidence, provided substantial evidence to support his RFC determination, and that the ALJ had no obligation to develop the record further.[3]  This court also finds that plaintiff's more discrete challenges to the RFC determination, namely the medical necessity of plaintiff's cane and the basis for the sit-stand option, do not present grounds for remand.

### 1.      The ALJ Adequately Developed the Record

Whether the ALJ has satisfied his duty to develop the record is a threshold question.  *Matthew D. v. Comm'r of Soc. Sec.*, No. 5:20-CV-793 (TJM); 2021 WL 1439669, at *6 (N.D.N.Y. April 16, 2021).  Before determining whether the Commissioner's final decision is supported by substantial evidence under 42 U.S.C. § 405(g), "the court must first be satisfied that the ALJ provided plaintiff with 'a full hearing under the Secretary's regulations' and also fully and completely developed the administrative record."  *Scott v. Astrue*, No. 09-CV-3999 (KAM) (RLM), 2010 WL 2736879, at *12 (E.D.N.Y. July 9, 2010) (quoting *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982)); *see also Rodriguez ex rel. Silverio v. Barnhart*, No. 02-CV-5782 (FB), 2003 WL 22709204, at *3 (E.D.N.Y. Nov. 7, 2003) ("The responsibility of an ALJ to fully develop the record is a bedrock principle of Social Security law.") (citing *Brown v. Apfel*, 174 F.3d 59 (2d Cir. 1999)).  Remand is appropriate where this duty is not discharged.  *Matthew D.*, 2021 WL 1439669, at *6; *see also Moran v. Astrue*, 569 F.3d 108, 114-15 (2d Cir. 2009) ("We vacate not because

---

[3] The ALJ took several steps during the administrative process to develop the record, including contacting plaintiff's treating sources when she was unrepresented, granting plaintiff's request for a supplemental hearing after she obtained representation, and providing that representative an opportunity to add to the record. (T. 34-35, 57, 83-84, 425-26, 433).

the ALJ's decision was not supported by substantial evidence but because the ALJ should have developed a more comprehensive record before making his decision.").

To satisfy the duty to develop the record, "an ALJ should have medical evidence from a medical source with a sufficiently persuasive opinion noting the existence and severity of a disability." *See Jackson v. Kijakazi*, No. 20-CV-7476 (JLC); 2022 WL 620046, at *17 (S.D.N.Y. March 3, 2022) (citation omitted).  When an ALJ's RFC determination is challenged by a plaintiff, a reviewing court's "decision not to remand assumes that there are no obvious gaps in the record precluding the ALJ from properly assessing the claimant's residual functional capacity." *Newton v. Berryhill*, No. 18-CV-1244 (MPS), 2019 WL 4686594, at *2 (D. Conn. Sept. 26, 2019) (quoting *Downes v. Colvin*, No. 14-CV-7147 (JLC), 2015 WL 4481088, at *15 (S.D.N.Y. July 22, 2015)); *see also Eusepi v. Colvin*, 595 F. App'x 7, 9 (2d Cir. 2014) (ALJ required to seek out additional evidence when there are "obvious gaps" in administrative record).

All of the consultative opinions relied upon by the ALJ were issued in April 2018. (T. 118-19, 652-57, 658-64).  During the administrative process, plaintiff amended her alleged onset date to January 6, 2019. (T. 83).  Plaintiff contends that this change renders all of the opinions relied on by the ALJ  "stale" and that remand is required so that the ALJ can solicit treating source or consultative opinions specifically addressing plaintiff's physical and mental RFC after the amended alleged onset date.  This court disagrees, and finds no basis for remand on these grounds.

"Courts routinely decline to remand based on reliance on an allegedly stale consultative opinion where the ALJ reconciled the examiner's findings with the claimant's subsequent treatment developments and additional limitations." *See*

*Rodriguez v. Kijakazi* No. 21 Civ. 2358 (JCM), 2022 WL 3211684, at *15 (S.D.N.Y. August 9, 2022) (collecting cases); *see also Jeffery M. v. Comm'r of Soc. Sec.*, 3:19-CV-435 (TJM), 2020 WL 3637646, at *8 (N.D.N.Y. July 6, 2020) (declining to find that "ALJ relied on 'stale' portions of the consultative examination, since he acknowledged that Plaintiff's medical condition had evolved . . ., cited medical evidence that explained the changing state of Plaintiff's shoulder, and relied on those portions of the opinions that addressed medical conditions that still remained fairly consistent during the relevant time").  The ALJ adopted that approach in this case.

For example, the ALJ found the April 12, 2018 opinion of consultative examiner Dr. Kalyani Ganesh to be "generally persuasive" in its assessment of plaintiff's physical impairments, but then appropriately reconciled that opinion with plaintiff's subsequent treatment developments and additional limitations. (T. 21).  Dr. Ganesh opined that plaintiff had "mild to moderate" limitations with lifting, carrying, pushing, and pulling but no gross limitations in sitting, standing, or walking. (T. 21, 661).  Although the ALJ found Dr. Ganesh's characterization of plaintiff's limitations to be "vague" due to a lack of detail, he ultimately concluded that it was consistent with the ability to perform light work. (T. 21).   Courts have found this to be a reasonable approach where the opinion is based upon an in-person examination.  *Raymonda C. v. Comm'r of Soc. Sec.*, No. 3:19-CV-0178 (GTS), 2020 WL 42814, at *4 (N.D.N.Y. Jan. 3, 2020) ("[A] 'moderate limitation' . . . is essentially equivalent to an ability to perform light work.") (collecting cases); *Gurney v. Colvin*, No. 14-CV-688S, 2016 WL 805405, at *3 (W.D.N.Y. Mar. 2, 2016) (finding that moderate limitations for "repetitive heavy lifting, bending, reaching, pushing, pulling or carrying" are consistent with an RFC for a full range of light work);

*April B. v. Saul*, No. 18-CV-0682, 2019 WL 4736243, at *5 (N.D.N.Y. Sept. 27, 2019) ("[M]oderate limitations in standing and walking are consistent with light work.") (citations omitted); *Moore v. Comm'r of Soc. Sec.*, No. 16-CV-270, 2017 WL 1323460, at *8 (N.D.N.Y. Apr. 10, 2017) ("[M]oderate limitations for sitting, standing, walking, bending, climbing stairs, and lifting or carrying heavy objects . . . [are] consistent with light work.") (citations omitted); *Martinez v. Comm'r of Soc. Sec.*, No. 13 Civ. 159, 2016 WL 6885181, at *13 (S.D.N.Y. Oct. 5, 2016), *report and recommendation adopted*, 2016 WL 6884905 (S.D.N.Y. Nov. 21, 2016) ("[M]oderate restrictions for lifting, pushing, pulling, overhead reaching, stooping, squatting, prolonged standing, and prolonged walking . . . are consistent with an RFC for light work.").

Rather than rely on this February 2018 opinion alone, the ALJ spent a considerable portion of his decision reviewing plaintiff's more recent medical history to determine plaintiff's RFC after her amended alleged onset date. (T. 17-19). This included a discussion of plaintiff's June 2020 surgery to address chronic neck pain, along with the post-operative records showing that plaintiff's physicians found her to have tolerated the procedure well, with a restrictive but "relatively comfortable" range of motion in her neck. (T. 1030-31, 1397, 1889-90). Plaintiff offered similar testimony regarding the success of the surgery, although she expressed concern that migraine headaches, which had seemed to be alleviated by the surgery, had returned. (T. 87-90).

The ALJ also discussed plaintiff's recent treatment for ankle or leg injuries arising from a number of reported trips and falls, but found that functional assessments performed by multiple physicians after the amended alleged onset date in May 2019, August 2019, September 2019, January 2020, February 2020, and October 2020, all

showed a normal gait, the ability to ambulate without difficulty, and full motor strength and full range of motion in her extremities. (T. 18, 1159, 1482-83, 1490-91, 1534-35, 1871-72, 1876).  With the exception of a sprained ankle in August 2020, physician-reviewed imaging reports from this period did not show any significant deterioration in plaintiff's condition or any new injuries or impairments. (T. 1009, 1072-73, 1483, 1876, 1889-90).

The ALJ undertook a similar exercise with regard to the mental health opinion evidence.  In April 2018, consultative psychiatric examiner Dr. Dennis Noia opined that plaintiff had no limitations understanding, remembering, or applying simple directions and instructions, but had mild limitations understanding, remembering, or applying complex directions and instructions. (T. 655).  In his opinion, plaintiff had "moderate" limitations regulating emotions, controlling behavior, and maintaining well-being, but no limitations sustaining concentration, performing a task at a consistent pace, or using reasoning and judgment to make work-related decisions. (*Id.*)  The ALJ found Dr. Noia's opinion to be "generally persuasive," but found that more recent psychiatric treatment records suggested more difficulty in social interaction due to reported mood swings and irritability. (T. 21, 655, 1935, 1940, 1950).  Therefore, the ALJ rejected the portion of Dr. Noia's opinion finding that plaintiff had "mild" limitations in social interaction and instead limited plaintiff to simple tasks, simple work-related decisions, and only occasional changes in the work setting that are more consistent with moderate limitations in this area. *See Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (where "[n]one of the clinicians who examined [Petitioner] indicated that she had anything more than moderate limitations in her work-related functioning," "the ALJ's determination

Petitioner could perform her previous unskilled work was well supported"); *Melisa G. v. Berryhill*, No. 3:18-CV-508 (DJS), 2019 WL 2502726, at \*5 (N.D.N.Y. June 17, 2019) (holding "moderate limitations are not prohibitive of performing unskilled work); *Wightman v. Comm'r of Soc. Sec.*, No. 18-CV-6295L, 2019 WL 2610712, at \*2 (W.D.N.Y. June 26, 2019) ("ALJ's finding that plaintiff's moderate limitation in social interaction permits him to tolerate "frequent" contact with supervisors, coworkers and the public was not erroneous"); *Carthron-Kelly v. Comm'r of Soc. Sec.*, 5:15-CV-0242 (GTS/WBC), 2017 WL 9538379, at \*7 (N.D.N.Y. September 25, 2017) (". . . because even a moderate limitation in social functioning would not preclude the demands of unskilled work, the ALJ's RFC determination that Plaintiff could frequently interact with others was not inconsistent with [medical opinion] that Plaintiff had "mild to moderate" limitations in this area.").

Plaintiff has provided no evidence of significant deterioration in her condition or previously undiagnosed impairments that would suggest that the consultative opinions from Dr. Ganesh or Dr. Noia were made stale by subsequent medical records. *Maxwell H. v. Comm'r of Soc. Sec.*, 1:19-CV-0148 (LEK/CFH); 2020 WL 1187610, at \*5 (N.D.N.Y. March 12, 2020) (A consultative opinion may become stale "if the claimant's condition deteriorates after the opinion is rendered and before the ALJ issues his decision.") (quoting *Clute ex rel. McGuire v. Comm'r of Soc. Sec.*, No. 18-CV-30, 2018 WL 6715361, at \*5 (W.D.N.Y. Dec. 21, 2018).  Likewise, this court's searching review of the record finds no obvious gaps that would necessitate remand.

Overall, the ALJ adequately articulated his reasons for finding portions of the various medical opinion evidence to be persuasive and satisfied his obligations under

the regulations.  The ALJ was not required to accept every limitation in the various medical opinions or to craft an RFC mirroring a particular opinion.  *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he [is] entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole.").  Accordingly, this court finds that the ALJ's evaluation of the medical opinion evidence and the resulting RFC determination are supported by substantial evidence.

### 2.    The ALJ Adequately Considered the Medical Necessity of Plaintiff's Cane.

In a more narrow challenge to the RFC determination, plaintiff contends that the ALJ erred by finding plaintiff's cane was not medically necessary. (Dkt. No. 12 at 23-24.)  To be medically necessary, "there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which the assistive device is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain, and any other relevant information)."  *Christine Lee S. v. Comm'r of Soc. Sec.*, No. 5:20-CV-1008 (CFH), 2022 WL 103108, at *4 (N.D.N.Y. January 11, 2022) (quoting SSR 96-9p, Titles II & XVI: *Determining Capability to Do Other Work – Implications of A Residual Functional Capacity for Less Than A Full Range of Sedentary Work*, 1996 WL 374185, at *7 (July 2, 1996)).  A cane need not be prescribed to be considered medically necessary, but there must be specific medical documentation establishing the need for it and the circumstances surrounding that need.  *Hoke v. Colvin*, No. 1:14-CV-663, 2015 WL 3901807, at *14 (N.D.N.Y. June 25, 2015).

Plaintiff has the burden to establish medical necessity.  *See Wilson v. Comm'r of Soc. Sec.*, No. 6:13-CV-643 (GLS/ESH), 2014 WL 4826757, at *11 (N.D.N.Y. Sept. 29, 2014).  A physician's mere observation of a patient using a cane or having an unsteady gait does not satisfy this burden.  *See Hoke v. Colvin*, No. 1:14-CV-0663 (GTS/CFH), 2015 WL 3901807, at *14 (N.D.N.Y. June 25, 2015).  Still, "when there is medical documentation about a cane in the record, an ALJ's failure to determine whether the cane is medically necessary or to incorporate the use of a cane into the RFC is legal error."  *Charles F. v. Comm'r of Soc. Sec.*, No. 19-CV-1664 (LJV), 2021 WL 963585, at *4 (W.D.N.Y. Mar. 15, 2021)

In this case, the ALJ recognized that plaintiff's cane had been prescribed by a physician, but found that the medical record did not establish its medical necessity.  (T. 19-20).  In support of this conclusion, the ALJ cited a number of physician-performed functional assessments, including one dated as recently as October 2020, all describing plaintiff as having no difficulty walking without a cane or other assistive device.  (T. 19-20, 659, 837, 844, 857, 1072, 1154, 1159, 1326, 1871-72, 1876).  Thus, the ALJ's decision demonstrates an appropriate evaluation of the medical records related to plaintiff's need for a cane, and substantial evidence supports his conclusion that her cane was not medically necessary.

Plaintiff points to examples in the record where plaintiff did utilize the cane, and cites other examples where a cane may have prevented some of plaintiff's falls. (Pl. Br. at 23).  In short, her challenge regarding the medical need for a cane is premised upon a disagreement over arguably conflicting evidence in the record.  This Court will not reweigh the evidence presented to the ALJ.  *See Warren v. Comm'r of Soc. Sec.*, No.

3:15-CV-1185 (GTS/WBC), 2016 WL 7223338, at *9 (N.D.N.Y. Nov. 18, 2016) ("When applying the substantial evidence test to a finding that a plaintiff was not disabled, the Court 'will not reweigh the evidence presented at the administrative hearing, . . . nor will it determine whether [the applicant] actually was disabled. [Rather], [a]bsent an error of law by the Secretary, [a] court must affirm her decision if there is substantial evidence [in the record] to support it.'") (quoting *Lefford v. McCall*, 916 F. Supp. 150, 155 (N.D.N.Y. 1996) (alteration in original)), report-recommendation adopted, 2016 WL 7238947 (N.D.N.Y. Dec. 13, 2016); *Vincent v. Shalala*, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) ("[I]t is not the function of the reviewing court to reweigh the evidence.").

Therefore, the ALJ's determination that plaintiff's cane was not medically necessary does not present grounds for remand in this case.

### 3.    The ALJ's evaluation of plaintiff's need to switch positions was supported by substantial evidence.

The ALJ found that plaintiff could meet the exertional demands of light work so long as she was limited to continuous standing and walking for no longer than thirty minutes at one time, with the option to sit at a work station for ten minutes and continue working. (T. 15). Plaintiff contends that this portion of the RFC determination was "fabricated out of whole cloth" because no medical opinion or treatment note contains such a limitation. This argument is unpersuasive.

To begin with, plaintiff has not shown how the ALJ's inclusion of a sit-stand option that appears more favorable to her than the less restrictive medical opinion evidence creates grounds for remand. *See Tammy Lynn B. v. Comm'r of Soc. Sec.*, 382 F. Supp. 3d 184, 195 (N.D.N.Y. 2019) ("There is nothing improper about an ALJ

21

considering medical opinion evidence that assesses, say, few or no exertional limitations and then relying in part on the combined force of other record evidence, such as a claimant's subjective testimony, to nevertheless choose to assign certain limitations that result in a *more* restrictive RFC finding.") (emphasis in original); *Lesanti v. Comm'r of Soc. Sec.*, 436 F. Supp. 3d 639, 649 (W.D.N.Y. 2020) ("The fact that the ALJ afforded Plaintiff the benefit of the doubt" and included additional functional limitations in the RFC is not grounds for remand.).

Most significantly, the ALJ's RFC determination appears very similar to plaintiff's own assessment of her ability to sit, stand, and walk and her need to change positions, as set forth in her February 21, 2020 hearing testimony:

> Q:   Okay.  How long can you stand and walk?
>
> A:   On a good day I can do maybe - I don't know - half an hour at a time, sometimes less, sometimes more.  Like I said I have good days and bad days.  I can - some days I feel great and other days I can't even get out of bed and it sucks.
>
> Q:   Okay.  How long can you sit?
>
> A:   Well, I am sitting on the edge about - usually about five to ten minutes after I sit I have to get up and stretch like I just did and then I can sit longer.

(T. 68).

Because plaintiff has not identified any record evidence undermining her own testimony regarding her need to change positions and have a sit-stand option, this court finds no grounds for remand.

## VII.  VE TESTIMONY/STEP FIVE DETERMINATION

### A.   Legal Standards

If a claimant is unable to perform a full range of a particular exertional category of work, or the issue is whether a claimant's work skills are transferable to other jobs, then the ALJ may utilize the services of a vocational expert. 20 C.F.R. §§ 404.1566, 416.966. A vocational expert may provide testimony regarding the existence of jobs in the national economy and whether a particular claimant may be able to perform any of those jobs given his or her functional limitations. *See Rautio v. Bowen*, 862 F.2d 176, 180 (8th Cir. 1988); *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983).

### B.    Application

Here, the ALJ obtained testimony from a different VE at each of the three hearings, but his decision was based exclusively on the testimony of the final VE, Julie Harvey. (T. 22-23, 38-42, 72-78, 97-103). His questioning to VE Harvey described a hypothetical individual matching his RFC determination for plaintiff, including the option to sit at a work station for ten minutes and continue working after thirty minutes of standing or walking. (T. 38-40). VE Harvey testified that someone of claimant's age, education, work experience, and RFC could perform a number of representative occupations existing in significant numbers in the national economy. (T. 38-40). She also testified that her analysis was consistent with the Dictionary of Occupational Titles ("DOT"), and that she relied on her professional experience to address certain issues, such as the sit-stand option, that were not directly addressed by the DOT. (T. 39-41).

Because the RFC determination was supported by substantial evidence, the ALJ's hypothetical to the VE was proper. *See McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir.

2014) ("An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion' . . . .") (citation omitted).  Thus, the ALJ could properly conclude plaintiff could perform other jobs existing in significant numbers in the national economy, and therefore was not disabled.

Plaintiff argues that the ALJ's step five determination was tainted by confusing or inaccurate VE testimony at the second hearing on April 19, 2021 regarding the number of representative jobs available in the national economy. (T. 97-103).  However, there is no evidence that the ALJ's step five determination relied on any vocational testimony except that of VE Harvey. (T. 22-23).  Therefore, plaintiff has not demonstrated that she was prejudiced by any earlier faulty VE testimony, and her argument does not present any grounds for remand.[4]  Based on the foregoing, the ALJ's decision was based upon correct legal standards, and substantial evidence supported his determination that plaintiff was not disabled.

**WHEREFORE**, based on the findings above, it is

---

[4] Prejudice would exist if the ALJ sought out new VE testimony to replace VE testimony favorable to plaintiff's disability claim.  *See, e.g., Scarborough v. Astrue*, No. 3:11-CV-286, 2012 WL 6838942, at *4-5 (E.D. Tenn. December 3, 2012) (remanding where ALJ did not provide a reasonable explanation for requesting new VE testimony after the first VE testified that there were no jobs that a claimant could perform.)  No such concerns are present in this case, where each of the three VEs identified unskilled work existing in significant numbers in the national economy that an individual with plaintiff's RFC could perform. (T. 38-39, 72-75, 98-102).

ORDERED, that the Commissioner's decision is **AFFIRMED**, and plaintiff's complaint is **DISMISSED**, and it is

ORDERED, that judgment be entered for the **DEFENDANT.**

Dated:  December 29, 2022

**Hon. Andrew T. Baxter**
**U.S.  Magistrate Judge**